**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| ALICE BAKER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 1:08-cv-464-MEF |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Following administrative denial of her application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401 *et seq.*, and Title XVI, 42 U.S.C. §§ 1381 *et seq.*, Alice Baker ("Baker") received a hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision.  When the Appeals Council rejected review, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). Judicial review proceeds pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and 28 U.S.C. § 636 (c), and for reasons herein explained, the court recommends the Commissioner's decision be AFFIRMED.

**I.  STANDARD OF REVIEW**

Judicial review of the Commissioner's decision to deny benefits is limited.  The court cannot conduct a *de novo* review or substitute its own judgment for that of the Commissioner. *Walden v. Schweiker*, 672 F.2d 835 (11th Cir. 1982). This court must find the Commissioner's decision conclusive "if it is supported by substantial evidence and the

correct legal standards were applied." *Kelley v. Apfel*, 185 F. 3d 1211, 1213 (11th Cir. 1999), citing *Graham v. Apfel*, 129 F. 3d 1420, 1422 (11th Cir. 1997).

Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994).

## II.  ADMINISTRATIVE FINDINGS

Baker, age 56 at the time of the hearing, attended community college.[1] She has

---

[1] R. at 547.

engaged in substantial gainful work activity since the alleged onset date of August 23, 2003.[2] Baker claims she is unable to work because of diabetes, hypertension, asthma, heel spurs, a heart condition, and anxiety.[3] The ALJ found Baker is severely impaired by diabetes mellitus, obesity, hypertensive heart disease, plantar fasciitis, and a history of asthma.[4] After reviewing Baker's medical record, the ALJ found she does not have any impairment or combination of impairments that meet or equal in severity any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.[5]

An echocardiographic report performed shortly after Baker's alleged onset date produced findings consistent with hypertensive heart disease.[6] Dr. Alvan Barber performed a consultative examination of Baker in August, 2004. Dr. Barber diagnosed asthma, with shortness of breath; congestive heart failure, by history; plantar fasciitis; anxiety; and morbid obesity. He concluded Baker was limited in walking, standing for long periods of time, and lifting/carrying heavy objects. He attributed Baker's decreased range of motion in her extremities and back to pain and tight muscles.[7] Dr. Jeff Oatley, Ph.D., performed a psychological examination of Baker in September, 2004. Dr. Oatley diagnosed adjustment

---

[2] R. at 16-17.

[3] R. at 74.

[4] R. at 17.

[5] R. at 22-23.

[6] R. at 277-78.

[7] R. at 302.

disorder with mixed anxiety and depression due to physical health problems, but found her otherwise self-sufficient.[8]

A residual functional capacity (RFC) assessment of Baker was performed by Dr. Nicholas Bancks in October, 2003.[9] Dr. Bancks concludes Baker could occasionally lift and/or carry twenty pounds; frequently lift and/or carry ten pounds; stand and/or walk at least six hours, and sit for six hours in an eight-hour day.[10] The assessment did restrict Baker's ability to climb and balance, in addition to restricting her exposure to fumes, odors, and hazards.[11] Dr. Bancks concludes Baker's stated symptoms were disproportionate to the expected severity or expected duration on the basis of her medically determinable impairments.[12] In September, 2004, Dr. Glenn Bigsby performed an RFC assessment of Baker based upon his review of records from treating physicians, consultative exams, imaging reports and laboratory information.[13] Dr. Bigsby noted Baker's hypertension was controlled and she had chronic fatigue due to diabetes treated with insulin. Baker's pulmonary function test did not meet listing values, and hematology and chemistry results

---

[8]R. at 322-24.

[9]R. at 291-98.

[10]R. at 292.

[11]R. at 293-95.

[12]R. at 296.

[13]R. at 314-21.

were essentially normal.[14]  The RFC assessment concludes Baker could occasionally lift and/or carry twenty pounds;, frequently lift and/or carry ten pounds; stand and/or walk at least two hours, and sit for six hours in an eight-hour day.[15]  Dr. Bigsby wrote the RFC restrictions on Baker's physical abilities were appropriate after considering the objective information in her records.  A final RFC assessment by Dr. Diane Muth in March, 2005, rated Baker able to occasionally lift/carry up to 50 pounds, frequently lift/carry up to 25 pounds, stand/walk up to six hours, and sit up to six hours in and eight-hour workday.  Dr. Muth cited Baker's medical tests for these conclusions.[16]

Baker's administrative hearing began with the ALJ asking whether she wanted to proceed without an attorney or other representative.  The ALJ explained he would first hear Baker's testimony about her medical conditions and ability to work, and then hear testimony from a vocational expert (VE).[17]  After Baker indicated she understood the hearing procedure, the ALJ asked

> ALJ:        Now having explained to you what the hearing consists of, do you wish to proceed without a representative?
>
> BAKER:   Yes.  But I - -
>
> ALJ:        You do have that right to have a hearing without one.

---

[14]R. at 315-16.

[15]R. at 315.

[16]R. at 444.

[17]R. at 545.

> BAKER: Yes. I couldn't find anybody. Anyway what I'm, she said that I'm here for a SSI, I'm here for my disability plus the SSI.
>
> ALJ: Yes. Let me go ahead and tell you what the record show[s]. It shows that you filed an application for Disability Insurance Benefits and Supplemental Security Income on April 23, 2004 and on those applications you stated that you became disabled as of August 23, 2003, is that correct?
>
> BAKER: Yes.[18]

The ALJ then reviewed the exhibits with Baker, and specifically mentioned his acceptance of her Right to Representation form reviewed and signed by Baker on the date of hearing, along with a statement that she would "do all on my own."[19]

Baker testified that she was currently working 19 and one half hours each week as a clerical aide at the Dothan Career Center, but could not work 40 hours a week if full time work was available because her current schedule caused fatigue and mental confusion.[20] Baker said her supervisor was aware of her mental confusion and double checks her work.[21] Baker also said she was given light duty in her previous position as a Cook II at an Adams Mark hotel in Florida, but eventually resigned due to her physical condition.[22] Prior to the cooking position, Baker worked as a clerk in two county offices.[23] Baker testified the stress

---

[18] R. at 545-46.

[19] R. at 546; 163-64.

[20] R. at 548-49.

[21] R. at 549.

[22] R. at 549-50.

[23] R. at 551-52.

which accompanies the county jobs was difficult, and attributed her alleged disability to chest pains, heart condition, and diabetes.[24]

Baker acknowledges her diabetes is somewhat controlled with insulin, pills, diet and low stress levels.[25] The diabetes sometimes causes nausea, confusion, and fatigue, while her heart problem also causes fatigue.[26] Baker lives alone, performs household chores, shops and drives.[27] Baker told the ALJ the records from her current treating physician were not included in the record, and the ALJ stated he would obtain those documents after the hearing.[28] The ALJ then asked Baker if there was any additional information relevant to her application. Baker acknowledged being overweight, but said many of her health problems preceded her obesity. She said her stress levels and depression were difficult to manage, and that she very much regrets being unable to work.[29]

The ALJ questioned a VE who categorized Baker's prior clerical work as sedentary and skilled.[30] The ALJ asked the VE to consider work limitations which correspond to the three RFC assessments in Baker's file, and the VE responded that each assessment would

---

[24] R. at 552-53.

[25] R. at 553.

[26] R. at 554.

[27] R. at 555.

[28] R. at 555-56; 566. The administrative file contains the treatment records ®. at 481-534).

[29] R. at 557-59.

[30] R. at 560-61.

7

permit her to perform clerical work of a light/sedentary nature.[31] Sedentary work includes Baker's former employment as a tag/tax clerk, and a court operations clerk.[32] The VE said an individual would not be able to perform any occupation if she had daily fatigue, inability to handle stress, inability to concentrate and general confusion.[33] Baker questioned the VE and challenged her testimony that Baker would be able to perform her past clerical work because of the stress involved.[34]

The ALJ decision noted that no treating physician placed any work restrictions on Baker.[35] He wrote Baker's RFC permitted sedentary work, with additional non-exertional limitations of avoidance of extreme temperatures, and even moderate exposure to humidity, fumes, odors, gases, dusts, and poor ventilation. The ALJ noted his consideration of the combined effects of Baker's obesity on other impairments in reaching his RFC finding.[36] The RFC assessments were considered the most probative documents in determining Baker's capacity for work, as the record did not contain any examining or treating medical source opinions.[37] The ALJ discussed the unanimous conclusion by three RFC assessments that

---

[31]R. at 561-63.

[32]R. at 563.

[33]R. at 563.

[34]R. at 564-65.

[35]R. at 22.

[36]R. at 23.

[37]R. at 24.

Baker is not disabled. He noted the assessments were by non-examining physicians and therefore not entitled to the weight due an assessment from a treating physician, but were nonetheless weighted appropriately in this case.[38]

The ALJ then discussed the consideration given to Baker's subjective allegations and record evidence within the context of the Eleventh Circuit's pain standard. The principal complaints under review were physical incapacity due to heel spurs, chest discomfort (attributable to stress), asthma, headaches, kidney pain, and anxiety/panic attacks. The ALJ highlighted the importance of credibility in a disability determination, and found Baker's claims of the limiting effects of her alleged symptoms were not credible.[39] The decision specifically cited an absence of vocational limitations by treating doctors, routine and/or conservative treatment for Baker's allegedly disabling impairments, relatively effective control of conditions through medication, and work activity after the alleged onset date. Baker's testimony concerning accommodations at her current and previous jobs was contradicted by the ALJ, who contacted both employers. Both employers denied knowledge of, or making allowances for, Baker's alleged conditions.[40] The ALJ also considered statements by family and friends, but these were assigned little or no weight as they are not medical evidence.[41]

---

[38]R. at 29.

[39]R. at 27-28.

[40]R. at 28.

[41]R. at 25-27; 29.

The ALJ considered Baker's RFC and VE testimony from the hearing to determine she is able to perform her past relevant work as a tag clerk or court operations clerk, as those occupations are generally performed in the national economy.[42] The finding regarding Baker's ability to resume her past work renders her ineligible for disability benefits under the Act.[43]

### III.  ISSUES

Baker presents two issues for judicial review:

1.  Whether the ALJ's RFC determination is supported by substantial evidence.

2.  Whether Baker was prejudiced by her lack of counsel at the administrative hearing.

### IV.  DISCUSSION

**1.  The ALJ's RFC determination is supported by substantial evidence.**

Baker argues the ALJ's RFC finding lacks the support of substantial evidence because the assessments performed were by non-examining reviewers, and she further argues the ALJ failed to develop a full and fair record because he did not request medical opinions from treating sources.  The Commissioner responds the RFC finding is supported by the record as a whole, including opinions from consultative examinations.

It is clear that an ALJ has a basic duty to develop a full and fair record.  *Ellison v.*

---

[42]R. at 29-30.

[43]R. at 30.  The ALJ's disability analysis followed the  five-step sequential evaluation process set forth in 20 C.F.R. §404.1520  and summarized in *Phillips v. Barnhart*, 357 F. 3d 1232 (11th Cir. 2004).

*Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); *see also* 20 C.F.R. § 416.912(d). Baker wrongly asserts the ALJ's RFC finding was based solely on the opinions of non-examining sources.[44] The hearing transcript shows the ALJ specifically told Baker he would follow through on her request that he obtain records from her current treating physician.[45] Notes from the treating physician were part of the record.[46] The record also included reports from Dr. Alvan Barber, who performed a consultative examination of Baker in August, 2004, and Dr. Jeff Oatley, Ph.D., who performed a psychological examination of her in September, 2004. The Commissioner argues the full record - treatment notes, examination findings from consultative medical sources, and documentation of Baker's claims, symptoms, and activities - provides a firm basis for the RFC determination that Baker can perform sedentary work.

Baker's claim that the ALJ's failure to recontact treating sources for opinions does not warrant reversal, as the ALJ notes that no treating physician had imposed limitations on Baker's work activity.[47] In addition, the treatment records showed a history of conservative treatment and symptoms controlled with medication.[48] In *Couch v. Astrue*, 267 Fed. Appx. 853, 855-56 (11th Cir. 2008), the Eleventh Circuit found the duty to

---

[44] Pl. Br. at 3.

[45] R. at 555-56.

[46] R. at 481-534.

[47] R. at 22, 28.

[48] R. at 28.

recontact did not arise because the ALJ had all the records from the treating medical source, and there was no need for additional information.  *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007) (no requirement that ALJ seek additional records where information before him is adequate).  Here, the ALJ had all records deemed relevant by Baker, and her appeal does not identify any existing records absent from the administrative file.

The circumstances of this case, primarily the ALJ's possession of treatment notes, consulting opinions, RFC assessments by reviewing physicians, and contradictory information from past and present employers regarding workplace accommodations, indicate the ALJ had adequate records to make his decision.  Under controlling precedent, this Court concludes the ALJ was not required to recontact treating physicians for formal opinions, and had substantial evidence for his decision that Baker can return to work as a tag/tax clerk or court operations clerk.

### 2.  Baker knowingly waived her right to counsel, and was not prejudiced by her decision to proceed without counsel.

Baker claims she was prejudiced by her lack of counsel during her administrative hearing.  She acknowledges a claimant may waive her right to counsel, but only where such waiver is knowingly and intelligently given.  Here, she claims she was not properly apprised of her options concerning representation.[49]  The Commissioner responds Baker made a knowing waiver and has not shown prejudice entitling her to a remand.

---

[49] Pl. Br. at 5-6.

12

Baker argues the hearing transcript illustrates her waiver of counsel occurred before the ALJ presented her options for counsel.  This argument ignores Baker's signed Right to Representation statement, which she adopted on February 7, 2007, the date of hearing.  The statement tells a claimant that they have a right to representation, and that counsel could be secured "free of charge from a local legal aid society" or on a contingency basis.[50]  Notwithstanding her knowledge of her options, Baker chose to proceed with her hearing.  The statement and record show Baker, a woman who completed high school and some college courses, was properly apprised of her options concerning representation.

Finally, Baker seeks to prove prejudice resulted from her lack of counsel.  "If there has been a waiver of counsel, the claimant must show 'clear prejudice or unfairness' caused by lack of counsel in order to prove that he was denied a full and fair hearing and is entitled to a remand."  *Kelley v. Heckler*, 761 F.2d 1538, 1540 n.2 (11th Cir. 1985).  Baker asserts she was prejudiced because counsel could have secured medical opinions which may have produced a different conclusion as to whether her condition met or equaled listing severity, or a different RFC finding which might have precluded her from working a forty hour week.

This argument fails because the prejudice is speculative, not "clear," as required by the Eleventh Circuit.  In *Newberger v. Commissioner of Soc. Sec. Admin.*, 293 Fed. Appx. 710 (11th Cir. 2008), the court cited the standard for prejudice.  "Prejudice 'at least

---

[50]R. at 163.

requires a showing that the ALJ did not have all of the relevant evidence before him in the record (which would include relevant testimony from claimant), or that the ALJ did not consider all of the evidence in the record in reaching his decision.'" *Newberger*, 293 Fed.Appx. at 713, quoting *Kelley* at 1540.  Baker has not identified a document which the ALJ did not have, or an included document which was not considered.  Rather, Baker suggests a different result might have resulted if the ALJ had sought opinions from treating physicians regarding her exhaustion and fatigue.  A possibility of a different outcome does not meet the standard of "clear" prejudice.

       The record demonstrates Baker made an informed decision to proceed with her administrative hearing without counsel.  Baker has not shown the record lacked relevant evidence, or that the ALJ failed to consider the entire record before him.  Baker is not entitled to a remand on this issue.

## V.  CONCLUSION

       For the reasons explained in this *Recommendation*, the Magistrate Judge concludes that the ALJ's decision is supported by substantial evidence and proper application of the relevant law,  and therefore, **RECOMMENDS** that the decision of the Commissioner be **AFFIRMED**.

       ***It is further ORDERED that the parties shall file any objections to the said Recommendation by June 30, 2009.***   Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.

The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 17th day of June, 2009.

/s/ Terry F. Moorer  
TERRY F. MOORER  
UNITED STATES MAGISTRATE JUDGE